### Moses Clark *vs.* Albert Baker.

Evidence is admissible to prove a usage in the port of Boston, that when a cargo of corn is sold in bulk, lying in the vessel in which it is imported, and the sale is made under a warranty, the purchaser receives and retains so much of the corn as answers the warranty, and rejects the residue, which, upon such rejection, becomes the property of the seller.

It is the duty of the seller of a cargo of corn in bulk, part of which is damaged, to separate the good from the bad, and offer the good to the buyer; and if he would hold the buyer to take all the good, he must make such separation and offer, although the buyer, after receiving a part of the corn, positively refuses to receive any more, at any rate.

Assumpsit for money had and received. The new trial, granted at March term 1843, (5 Met. 452 – 462,) was had before *Wilde*, J. whose report thereof was as follows:

There was evidence tending to prove the following facts: On the 21st of September 1841, the defendant was the owner of the schooner Shylock, then lying in Boston, and of a cargo of corn on board of said schooner; and the plaintiff, on that day, purchased the said cargo of the defendant, agreeing to pay 76½ cents per bushel for the yellow corn, and 73½ cents per bushel for the white corn; the defendant warranting it to be of a certain quality. The quantity of the corn was not ascertained at the time, but the cargo consisted of between 2000 and 3000 bushels. On the same day, the plaintiff paid the defendant $1200, "on account of corn per schooner Shylock," and the schooner was hauled, on that day, to the plaintiff's wharf, and he commenced discharging the corn into his store. He received about 1100 bushels of the white, and 336 bushels of the yellow corn — enough, at the agreed price, to amount to $1067·02 — and refused to receive any more of the cargo, upon the ground that the corn remaining in the schooner, and which he thus refused to receive, was of an inferior quality, and not such as the defendant warranted the cargo to be. The plaintiff gave immediate notice to the defendant of his objection to receiving any more of the cargo, and requested him to haul his schooner from the plaintiff's wharf, positively declining to receive any more of the cargo,

unless obliged to. This action is brought to recover the differ-ence between the sum of $1200 and $1067·02. The defend-ant objected, as at the former trial, that this was an entire contract, and that this action could not be maintained, unless the plaintiff could prove an offer to return the corn which he had accepted and received into his store. This objection being sustained by a former decision in the case, (5 Met. 452,) the plaintiff then offered evidence tending to show the existence of the following usage in the port of Boston, viz. that when a cargo of corn is sold in bulk, lying in the vessel in which it is imported, and the sale is made under a war-ranty, the purchaser receives and retains so much of the corn as answers the warranty, and rejects the residue, which, upon such rejection, becomes the property of the seller. The de-fendant objected to the introduction of this usage, as being contrary to the rules of law and the express contract of the parties. The judge overruled this objection, admitted the evidence, and instructed the jury, that if they believed the usage to be proved, and that the corn rejected was not as good as warranted to be, they should find a verdict for the plaintiff.

Much evidence was introduced upon the question, whether the corn which the plaintiff refused to receive was or was not such as the defendant was bound by his warranty to deliver; and the defendant requested the judge to instruct the jury, that although it was the duty of the defendant, or his agent, originally to select the good corn from the bad, yet if they believed the plaintiff positively refused to receive any more corn at any rate, this positive refusal excused the de-fendant from this duty, and that if there was corn enough in the schooner, corresponding with the warranty, which might have been so separated and delivered, to an amount equal to the sum claimed in this suit, the defendant would not be liable under the usage set up by the plaintiff. The judge declined to give this instruction to the jury, but instructed them that when the plaintiff refused to take any more corn, and the defendant insisted, it was the duty of the defendant

to trim the corn, that is, to separate the good from the bad, and offer the former to the plaintiff ; and that the plaintiff 's previous positive refusal to receive any more at any rate did not excuse the defendant from this obligation ; and that, if any considerable quantity of that which remained was damaged, the plaintiff was not bound to receive any more.

Under these instructions and rulings, the jury found a verdict for the plaintiff, and the defendant moved for a new trial, for the causes aforesaid.

*C. T. Russell*, for the defendant

*G. T. Curtis*, for the plaintiff.

The opinion of the court was delivered March 22d 1847.

DEWEY, J.   The extent to which local usages of trade are to be applied, in the construction and effect to be given to contracts, is a matter by no means free from difficulty. These usages differ essentially from those more general customs, which are known and exist as part of the general law of the land, and which are observed and applied without being established by evidence offered in each particular case. These local usages may be of comparatively recent origin, and may be limited to a single city or village ; and yet, if reasonable in their provisions, and so generally adopted by those concerned in any peculiar branch of business, as to authorize the presumption that they are known by those who are dealing as vendors and vendees in that branch of trade or business, the dealings and contracts of such persons are considered to have been made in reference to such usages, and to be governed thereby.   Learned jurists have often expressed their regret at the extension of this species of evidence, and especially that as to usage of a local and limited character, as impairing, in some degree, the symmetry of the law, and tending to uncertainty and embarrassment in the administration of justice, and also liable to the serious objection, that the knowledge, by the party to be affected by it, of the existence of such usage, is a mere legal presumption, which may often be unfounded in reality, although such usage is established by what is deemed competent legal evidence.   Notwith-

standing these objections, such local usages have been held admissible by the judicial tribunals, as competent to explain and qualify the contract, and give to it an effect materially different from that which the general law would have done, in the absence of all evidence of such usage. The cases are too numerous to cite in detail, and I will only refer to them generally, as fully collected in the notes to 1 Smith's Leading Cases, (Amer. ed. of 1844) 418.

In the present case, the usage found by the jury goes directly to establish a rule in contravention of the rules of the common law, in relation to rescinding a contract in a case of sale of an unsound article, accompanied by a warranty, or induced by false representations. The general rule of law requires the vendee, if he would rescind the sale for such cause, to restore the entire commodity purchased. The local usage proved is, that in a sale of corn under like circumstances, the party may keep so much of the commodity as answers the warranty or representation, and decline taking the residue; that is, he may rescind the contract in part, and, without returning the corn he has received, may recover back the money paid for so much of the article as does not answer the representation. This usage is certainly not an unreasonable one, and not to be rejected upon that ground. The nature of the commodity, the manner of exposing the article for sale, the price being fixed by the bushel, and the mode of delivery, all alike point out this as a reasonable and convenient usage. We understand the contract to have been an oral one. Such being the case, the admission of the evidence of the usage is not objectionable upon the ground of its being offered to control, vary or contradict a contract in writing. Nor does the usage contradict any express oral contract made by the parties. Had it done either, it would have presented a very different question.

Usages of this character are only admissible upon the hypothesis that the parties have contracted in reference to them. If the parties make express stipulations as to the terms of a sale, or the manner of performance of a contract, or state

Clark *v.* Baker.

the conditions upon which it may be rescinded, such express stipulations must be taken as the terms of the contract, and they are not to be affected by any usage contrary to them.

Looking at the usage relied upon in the present case, and taking it to have been found by the jury to be well established by the proof, as a general usage of the dealers in similar commodities, in Boston, and finding the same is not repugnant to any express stipulation in the contract of the parties ; without any disposition on the part of the court to extend the doctrine of local usages beyond the adjudicated cases, yet we have not felt authorized to reject the evidence offered in the present case.

Upon the remaining point raised in the case, the court are of opinion, that the duty of separating the merchantable corn from that which was not so, where there was any considerable quantity damaged, was a duty devolving upon the vendor. He sold the corn as of a certain quality. If a separation of one portion of it from another was necessary, to furnish corn of the proper quality to correspond with that stipulated for, the labor of doing this properly devolved upon the vendor, and the refusal of the vendee, before such separation, to receive the commodity, would not excuse the vendor from the duty of separating and offering the merchantable corn, if he would entitle himself to carry into effect the contract, and require the vendee to take all the corn corresponding to the representation.

The ruling of the presiding judge at the trial was correct. and judgment must be entered for the plaintiff.